UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

SHIRLEY ANN MEREDITH,

                              **DECISION AND ORDER**

              Plaintiff,                    1:19-CV-00205(JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.
───────────────────────────────

        This is an action brought pursuant to 42 U.S.C. §405(g) to review the Commissioner of Social Security's final determination that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [7, 9].[1] The parties have consented to my jurisdiction [11]. Having reviewed the parties' submissions [7, 9, 10], the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 529-page administrative record is presumed. On April 14, 2015, plaintiff filed an application for DIB, alleging a disability onset date of April 1, 2013, arising from fibromyalgia, myalgia, anxiety, and depressive order. Administrative record [4], pp. 32-33, 130. Plaintiff's last insured date is September 30, 2014. Id., p. 22.

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

During the relevant period - April 1, 2013 to September 30, 2014 - plaintiff treated with her primary care provider, Lorie A. Lashbrook, M.D.[2] On June 13, 2013, she underwent a comprehensive physical as a new patient. At that time, she complained of back pain and pain on the right side of her ribs which was not alleviated with Tylenol, but denied any muscle aches or pains. Id., p. 205-07. Dr. Lashbrook noted that she "[d]id not have time to work up back and rib pain more extensively". Id., p. 209. Her musculoskeletal exam was also normal. She had a "normal gait", her upper and lower extremities were "normal to inspection and palpation", and her "motor strength [was] intact". Id., p. 207. Dr. Lashbrook noted that there were "[n]o signs of acute distress present", and that plaintiff appeared "healthy and well developed". Id.

When plaintiff returned to Dr. Lashbrook on August 22, 2013 for a "routine visit", she complained of "general body aches" and "feeling fatigued a lot with no energy". Id., p. 210. She described that "[s]ometimes she feels achy. Nothing is really new". Id. On November 22, 2013, plaintiff was seen for chronic medical conditions, which were identified as "diabetes, [hypertension], hyperlipidemia, hypothyroidism, anxiety and [gastroesophageal reflux disease]". Id., p. 213. It was noted that she was "[c]omplaining of some discomfort on the right side that has been present for a while". Id. During a March 26, 2014 routine visit, plaintiff complained of "left sided posterior rib pain x 1 year worse laying down or standing up while she's doing dishes. Has not tried any OTC pain medications". Id., p. 217. For her back pain, it was recommended that she use Tylenol as needed and to use heat or ice on the affected area. Id., p. 220. In June 2014, plaintiff was treated for diverticulitis. Id., pp. 225, 371. At a routine visit on July 31, 2014, plaintiff denied any muscle aches or pains. Id., p. 227.

---

[2]   Although plaintiff was treated for other issues, I have focused on her fibromyalgia, since that is the focus of plaintiff's argument.

After September 30, 2014, plaintiff's last insured date, her complaints of pain increased, prompting Dr. Lashbrook on December 30, 2014, to prescribe Meloxicam, an anti-inflammatory, and to refer her to a rheumatologist. Id., p. 238.  Plaintiff began treating with Danilo Saldana, M.D. on March 13, 2015. Id., p. 276.  According to Dr. Saldana's initial treatment record, plaintiff complained of pain in her hands, hips and legs, which began five years earlier. Id. Although she had "full" or "good" range of motion, he noted that she had "many tender points in the upper neck, upper back, upper chest, low back, elbows, hips, and knees". Id., p. 277.  Dr. Saldana's impression was that plaintiff had a variety of ailments, including fibromyalgia, low back pain, Sjögren's syndrome,[3] and fatigue. Id.  Plaintiff was started on gabapentin. Id. However, on July 23, 2015, plaintiff reported to Dr. Saldana that the gabapentin was "not really helping her", prompting Dr. Saldana to increase the dosage. Id., p. 355-56.  In October 2015, plaintiff reported that gabapentin as only "slightly helping her", and Dr. Saldana again increased her dosage. Id., p. 354.[4]

After plaintiff's claims were initially denied, an administrative hearing was held on June 16, 2017 before Administrative Law Judge ("ALJ") John Benson, at which plaintiff, who was represented by counsel, and a vocational expert testified.  Id., pp. 27-58. Plaintiff was 60 years old at the time of the administrative hearing.

At the hearing, plaintiff testified that Dr. Lashbrook would "ignore" her complaints of pain.  Id., p. 40. Plaintiff also testified that she was able to sit for "not more than 10, 15 minutes" and stand for "probably a half hour", and that those were her limits over the

---

[3]  "Sjögren's syndrome 'is a disorder of the immune system identified by its two most common symptoms - dry eyes and a dry mouth. It often accompanies other immune system disorders, such as rheumatoid arthritis and lupus.'" McCann v. Commissioner of Social Security, 2014 WL 4199230, *4 n. 6 (N.D.N.Y. 2014).

[4]  During this period, plaintiff continued to treat with Dr. Lashbrook.

years.  Id., p. 42. However, plaintiff testified that she had been able to walk for four miles, but that it decreased to two miles in 2013 and 2014. Id., p. 43.  At the time of the hearing, plaintiff was no longer walking outside. Id.

In his August 29, 2017 decision, ALJ Benson determined that plaintiff's medically determinable impairments included fibromyalgia, diverticulitis, hypothyroidism, chronic kidney disease, hypertension and obesity. Id., p. 17.  However, since plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months, he concluded that she did not have any severe impairments. Id. Based on that finding, ALJ Benson ceased the sequential process at step two, and concluded that plaintiff was not under a disability from April 1, 2013 through September 30, 2014.  Id., p. 2.

ALJ Benson's decision became the final decision of the Commissioner when the Appeals Council found no reason to review the ALJ's decision.  Id., pp. 1-5. Thereafter, this action was commenced.

## DISCUSSION

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

In seeking reversal or remand for further administrative proceedings, the Commissioner broadly argues that ALJ Benson "erroneously found all of [her] impairments to be non-severe" and that in light of that error, the decision was not supported by substantial evidence. Plaintiff's Memorandum of Law [7-1], pp. 10-16. However, fibromyalgia is the impairment that plaintiff focuses on in her submissions. *See* plaintiff's Memorandum of Law [7-1], pp. 13-15; plaintiff's Reply [10], p. 2. According to plaintiff, ALJ Benson failed to consider the effects of her fibromyalgia and "misapplied" the *de minimis* showing required for establishing a severe impairment. Plaintiff's Memorandum of Law [7-1], p. 14.

In response, the Commissioner argues that ALJ Benson "properly found that Plaintiff's impairments were non-severe because the scant medical evidence during the relevant period did not demonstrate that [her] medically determinable impairments significantly limited her ability to perform basic work-related activities for twelve consecutive months". Commissioner's Brief [9-1], p. 6.

To be severe, and impairment must by itself "significantly" limit a claimant's ability to do "basic work activities," which include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§416.920(c), 416.921(b)(1). "The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." Ryan v. Colvin, 2017 WL 2240256, *3 (W.D.N.Y. 2017).

However, the determination of whether or not an impairment is severe at step 2 of the sequential evaluation process is intended only to "screen out *de minimis* claims". Dixon v. Shalala, 54 F.3d 1019, 1030-31 (2d Cir. 1995). Thus, a "non-severe" impairment is one that is "a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities". Social Security Ruling 96-3p, 1996 WL 374181, *1. Ultimately, plaintiff bears the burden "to show that [s]he suffers from a severe impairment that renders h[er] disabled". Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

In explaining why he concluded that plaintiff's fibromyalgia was not a severe impairment, ALJ Benson explained that plaintiff:

> "was not diagnosed with fibromyalgia until March 2015, by rheumatologist Danilo B. Saldana, M.D. . . . It is reasonable to conclude that these conditions did not develop overnight, but the lack of significant clinical findings prior to the date last insured is inconsistent with the claimant's allegations of disabling symptoms and limitations prior to the date last insured. Moreover, I noted that in December 2014, in addition to intact motor strength in the upper and lower extremities, musculoskeletal examination from Dr. Lashbrook showed a normal gait, grossly normal head and neck, normal spinal contour, normal posture and normal inspection to palpation of the upper and lower extremities. Additionally, medical [c]onsultant, H. Kushner, M.D., a reviewing medical expert for the agency, reviewed the evidence prior to and after the date last insured and assessed fibromyalgia as a non-severe impairment . . . . Dr. Kushner's opinion is particularly important evidence, because he was able to review the entire record and make a retrospective assessment as to whether the claimant had a severe physical impairment prior to the claimant's date last insured. I give this opinion great weight." [4], p. 19.

"Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have *normal physical examinations*, e.g., full range of motion, no joint swelling, normal muscle strength and n*ormal neurological reactions*." Campbell v. Colvin, 2015 WL 73763, *5

(N.D.N.Y. 2015) (emphasis in original). *See also* Herzog v. Commissioner of Social Security, 2017 WL 4296310, *4 (S.D. Ohio 2017) ("[t]he ALJ noted records indicating that plaintiff had a normal range of motion and normal muscle strength . . . . However, fibromyalgia patients demonstrate normal muscle strength and can have a full range of motion").

Plaintiff made complaints of pain and fatigue during the relevant period. [4], pp. 205, 209-12, 213, 217, 220. The fact that these symptoms were unaccompanied by abnormal physical exam findings does not necessarily mean that plaintiff's fibromyalgia was a non-severe impairment.

However, plaintiff fails to address ALJ Benson's additional reliance on Dr. Kushner's opinion, formulated after a review of her longitudinal medical records, that plaintiff's fibromyalgia was non-severe during the relevant period. The great weight that ALJ Benson placed on Dr. Kushner's opinion, which is consistent with the record, is sufficient to constitute substantial evidence. *See* Hairston v. Commissioner of Social Security, 2020 WL 516897, *4 (W.D.N.Y. 2020) ("[i]t is well-established that a well-supported opinion from . . . a non-examining state agency doctor . . . may provide substantial evidence supporting an ALJ's decision"); Garcia v. Colvin, 2014 WL 1311959, *8 (E.D.N.Y. 2014) ("[t]he ALJ was entitled to rely on [the state-agency review psychologist's] opinion as it is acceptable to assign such weight to the opinion of a medical expert who has reviewed all of the medical evidence and issued an opinion consistent with the substantial evidence").

Although plaintiff points to the fact that gabapentin was ineffective for her pain after the relevant period (*see* plaintiff's Reply Memorandum of Law [10], p. 3 (*citing* [4], p. 355 – a July 23, 2015 treatment summary from Dr. Saldana), many of the treatment records during

the relevant period reflect no more than "mild subjective complaints". Commissioner's Brief [9-1], p. 10. For example,

-- on June 13, 2013, Dr. Lashbrook noted that plaintiff showed "no signs of acute distress" ([4], p. 207);

-- on August 22, 2013, plaintiff reported that "sometimes she feels achy. Nothing is really new" (id., p. 210);

-- on November 22, 2013, plaintiff complained of "some discomfort on the right side that has been present for a while" (id., p. 213);

-- on March 26, 2014, Dr. Lashbrook noted that plaintiff had "mild pain to palpation over lower rib cage" (id., p. 218); and

-- on July 31, 2014, plaintiff "denies muscle aches or pains" (id., p. 227).

There are no complaints in the treatment records suggesting that plaintiff's pain or fatigue had more than a minimal effect on her ability to work during the relevant period. "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." Dailey v. Commissioner of Social Security, 2016 WL 922261, *6 (N.D.N.Y.), adopted, 2016 WL 917941 (N.D.N.Y. 2016); McAllister v. Commissioner of Social Security, 2015 WL 164783, *7 (N.D.N.Y. 2015) ("[t]his evidentiary standard is quite deferential to the Commissioner because its threshold is low . . . . [E]vidence is substantial when *any* reasonable mind might accept it even though *most* reasonable minds would not" (emphasis in original)); Brault v. Social Security Administration Commissioner, 683 F.3d 443, 448 (2d Cir. 2012) ("[t]he substantial evidence standard means

once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*' " (emphasis in original)).

In light of that standard, the record provides substantial evidence supportive of ALJ Benson's decision that plaintiff's fibromyalgia was non-severe.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [7] is denied.

**SO ORDERED**.

Dated: July 28, 2020

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
